REGAN, Judge.
Plaintiff, Maggie Curtis Marcel, instituted this suit against the defendants, George Stringer, who had been committed in 1933 to a mental institution but never formally interdicted, and his wife, Jennie Hunt Stringer, endeavoring to have a boundary fixed and a fence erected between their respective properties, designated as Lots “M” and “V”. No request was made by the plaintiff for the appointment of a curator ad hoc to represent the defendant, George Stringer.
Defendant, Jennie Stringer, pleaded the exception relating to her husband’s capacity to stand in judgment and the exceptions of no right or cause of action, and of prescription.
The trial court ex proprio motu, appointed Guy L. Deano, Jr., curator ad hoc to represent George Stringer and referred the other exceptions to the merits.
Defendant, Jennie Stringer, then answered and asserted that the property upon which plaintiff seeks to have a boundary fixed and a partition fence erected, is bur *696 dened with a servitude by destination du pere de famille, granted by the former owner of both lots and, therefore, this action is in violation thereof.
The curator ad hoc, appointed on the morning of the trial, filed no answer.
The lower court rendered judgment as prayed for in favor of the plaintiff and against George Stringer and his wife', Jennie Stringer.
Thereafter, the curator filed a 'motion for a new trial, asserting that he was improperly appointed. Defendant, Jennie Stringer, likewise filed a motion for a new trial, reurging the original exceptions and defenses, which was granted.
Plaintiff then filed a motion to have the court appoint a curator ad hoc for George Stringer, upon whom a copy of the petition was served. Since Guy L. Deano, Jr., was again appointed, the court accepted, with the consent of the litigants, the evidence and testimony adduced in the original trial hereof.
In connection with the validity of the exception relating to the incapacity of the defendant, George Stringer, counsel for defendants argue that a curator ad hoc may be appointed to represent a mental incompetent who has been committed to an institution only after strictly complying with the requisites of Code of Practice, Art. 964, which in part provides:
“ * * * but in such cases, the person claiming must in his petition, pray the court to which it is addressed to appoint a tutor or curator ‘ad hoc’ to defend the minor, insane or absent person in the action.” (Emphasis added.)
The trial judge obviously was aware of the deficiency in his initial appointment of the curator ad hoc ex proprio motu and granted a new trial in order that the appointment of the curator could be made in substantial compliance with the requirements of the foregoing article of the Code of Practice. The second appointment was requested by the plaintiff and was made through the medium of a motion and order, which we think was sufficient to cure the deficiency of the first appointment. Although Article 964 requires that the plaintiff must pray for a curator ad hoc in his petition, we must bear in mind that the fundamental purpose of this article is to insure the insane or absent person of adequate representation when- his interests are litigated. To reason otherwise would involve the very nature of the judicial process in the checker game of semantics. Therefore, since we are of the opinion that the insane defendant was adequately represented, the exception aimed at the manner in which the curator was ultimately appointed possesses no merit.
The record relating to. the merits of the case reveals that the plaintiff, Maggie Curtis Marcel, is the owner of property in the City of New Orleans, designated by Municipal No. 1826 Third Street. She purchased this property on September 22, 1948, from Ida Ruth Voss, Alvin Voss, Albert Voss and Mina Voss, who acquired this property as co-owners in indivisión from an ancestor’s estate in 1908.
Defendant, Jennie Stringer, purchased the adjacent property from the same vendors on April 30, 1949, which is designated by the Municipal Nos. 1828-32 Third Street. On the above date, her husband, George Stringer, had been incarcerated in a mental institution for many years; nevertheless, the community of acquets and gains still existed between them.
When both sales were consummated, there-was no fence which separated these properties ; however, they are presently divided, by a narrow alleyway. In 19S5, defendant constructed steps to service a side entrance to her home in order that the tenants, who occupied the rear portion thereof could enter the premises without disturbing the-privacy of tenants who occupied rooms, serviced by a front entrance.
*697 Before instituting this suit, plaintiff attempted to fix the boundary amicably, but the defendant refused. Thereafter, E. L. Eustis was appointed by the court to survey the property and fix a boundary. This •official survey disclosed that the steps, constructed by defendant, encroached on plaintiff's property. If the fence is erected in conformity with the plaintiff’s request, the steps will have to be removed and the ■divided passageway will then be too narrow for defendant’s future use.
Plaintiff insists that she has the right to have a boundary fixed on the line between her property and that owned by the defendant by virtue of the provisions of LSA-C.C. Art. 823[1], and that the right to institute an action in boundary does not prescribe when it has never been fixed.
Defendants, on the other hand, maintain that by virtue of both estates having been held in common for more than 40 years, the alleyway has become a servitude by destination du pere de famille[2], that both plaintiff and defendant purchased their respective properties subject to encroachments; however, the survey used in connection with the sale of the property to both plaintiff and defendants reflects no ■encroachments. Consequently, defendants ingeniously conclude that the Notary Public in transferring these properties must have erroneously referred to the “servitude” as an “encroachment”; therefore, since the existence of a servitude has been established, defendants plead the prescription of ten and thirty years.
It is a well-established principle of our law that where no boundary has been fixed between properties of adjacent landowners, either has the right to have the boundary judicially fixed if the parties cannot amicably agree in establishing a dividing line.
Defendants rely on the assumption that this alleyway is a servitude by destination du pere de famille. LSA-C.C. Art. 767, supra, prescribes the manner in which such a servitude is established and further provides that only continuous apparent servitudes may be created in this way. All other servitudes must exist by virtue of a title.[3]
The servitude which defendant insists exists on these properties is one of right of passage, and this is specifically designated as a discontinuous apparent servitude by LSA-C.C. Art. 727.[4]
The argument to the effect that the clause relating to encroachments contained in both plaintiff’s and defendants’ titles creates a servitude is untenable. The *698 steps referred to hereinabove were erected in the alleyway by the defendants in 1955 ; therefore, they could not have been covered by the reservation contained in plaintiff’s title dated September 22, 1948.
Since the defendants have failed to prove that a boundary has ever been established between the properties in question, we are of the opinion that the right to fix a boundary has never been exercised, and therefore plaintiff is entitled to have one set at this time.
For the reasons assigned, the judgment appealed from is affirmed at defendants’ cost.
Affirmed.

. “When two estates or lands contiguous, in cities or in the country, have never been separated, or have never had their boundaries determined, or if the bounds, which have been formerly fixed, are no longer to be seen, each of the owners of the contiguous estates has a right to compel the other to fix the limits of their respective properties.”

. LSA-C.C. Art. 767 — “The destination made by the owner is equivalent to title with respect to continuous apparent servi-tudes.
“By destination is meant the relation established between two immovables by the owner of both, which would constitute a servitude if the two immovables belonged to two different owners.”

. LSA-C.C. Art. 766 — “Continuous nonap-parent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title.
“Immemorial possession itself is not sufficient to acquire them.
“Immemorial possession is that of which no man living has seen the beginning, and the existence of which he has learned from his elders.”

.“Servitudes are either continous or discontinuous.
“Continuous servitudes are those whose use is or may be continual without the act of man.
“Such are aqueducts, drain, view and the like.
“Discontinuous servitudes are such as need the act of man to be exercised.
“Such are the rights of passage, of drawing water, pasture and the like.”