207 So.2d 493 (1968)
Walter James SCOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 67-186.
District Court of Appeal of Florida. Second District.
February 28, 1968.
*494 Raymond E. LaPorte, of Ragano & LaPorte, Tampa, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
PIERCE, Judge.
This is an appeal by appellant Walter James Scott from a judgment of conviction entered against him for the offense of manslaughter, consequent upon a verdict of guilty by a jury upon trial of an indictment charging first degree murder.
The indictment was returned in the Hillsborough County Circuit Court on November 1, 1966, charging Scott with having murdered one Carolyn Scott with a pistol. Prior to trial, defendant Scott filed motions to quash the indictment and to quash the petit jury panel previously drawn, which motions were denied. Upon plea of not guilty, the case was tried to a jury resulting in a verdict of guilty of manslaughter. Motion for new trial was denied, and from the judgment and sentence entered, Scott appeals to this Court. He assigns as error the trial Court's ruling on the pre-trial motions aforesaid and also certain matters arising during the trial. We have reviewed the entire record and the able briefs of the parties, and upon due consideration we are of the view that no reversible error has been made to appear. We therefore affirm.
The aforesaid motions to quash were grounded upon the proposition that the juries were not drawn in accordance with the due process requirements of the Fifth and Fourteenth Amendments to the federal Constitution and the Declaration of Rights of the Florida Constitution. Specifically, it was contended that defendant was a male Negro and there was an unlawful and systematic exclusion of Negro women on the jury panel in Hillsborough County; that such exclusion of Negro women was solely because of their sex; and that the proviso in F.S. § 40.01, F.S.A. which states that "the name of no female person shall be taken for jury service unless said person has registered with the clerk of the circuit court her desire to be placed on the jury list" violated the defendant's rights to due process of law and the equal protection of the laws as applied to "particularly Negro women".
Testimony on the motion was taken from the two Hillsborough County jury commissioners[1] and the Court clerk in charge of the jury list. The testimony shows substantially the following:
 the jury list is made up each year by the jury commissioners from the names on the voters registration list in the County Election Supervisor's office;
 in the current year of trial there were 177,991 registered voters in the County, of whom 20,144 were Negro men and women;
 the Negro women outnumbered the Negro men on the voting list roughly 60% to 40%;
 approximately 300 women on the voting list had registered and were eligible for jury duty;
 on the current jury list of approximately 9300 there were 180 women drawn, none of whom were Negro women;
 so far as the witnesses knew there had never been a Negro woman on the jury list;
 upon invitation from any women's club or group the election officials would go out or send a representative to speak at their meeting to encourage women to register for jury duty;
 on at least two occasions, once in north Tampa and once in southwest Tampa, such speakings had taken place;
 local "newspapers have had quite a bit of publication "urging such voting registration, *495 ranging all the way from "four to six inch spreads to a full page spread", all news articles and editorials, no advertisements; but there had been no concerted effort by the officials "to encourage or entice or ask any of them (women) to come in" to register for jury duty;
 to their knowledge no such request had ever come from any Negro women's group, but if so it would have been complied with; and
 they had not contacted any such Negro group because "it wouldn't be our prerogative. It would be theirs to ask us".
The proviso to F.S. § 40.01, F.S.A. hereinbefore quoted was held constitutional by the Florida Supreme Court in Hoyt v. State, Fla. 1959, 119 So.2d 691, and thence by the U.S. Supreme Court in Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118. That case arose from Hillsborough County and involved a white woman defendant, one Gwendolyn Hoyt, who was indicted, tried and convicted of the second degree murder of her husband. She there contended that the proviso violated her Constitutional rights, both vel non and also in its application to her. The State and the U.S. Supreme Court both upheld constitutionality of the proviso as written and in its application.
Defendant Scott admits the Court decisions as to validity of the proviso, but contends that the fact that "no Negro woman has ever registered or been called to serve on a * * * jury panel in this County" has resulted in "the complete exclusion of an identifiable group", namely, Negro women, in violation of their Constitutional rights. Such contention is summarized in his brief filed here as follows:
"The Florida Statute relating to the jury is not discriminatory on its face. Discrimination against Negro women results from the administration of the system. The jury commissioners made no effort to see that Negro women were aware of the requirement to register before they would or could be called for jury service. The jury commissioners made no effort to seek out Negro women to register so that the panels would reflect a true cross section of the community."
Thus, defendant infers the jury commissioners had a duty to promote more substantial representation on the jury list by Negro women; that in discharging such "duty" the commissioners should go out among the Negro communities and the Negro groups and send out notices and messages to their organizations, churches, clubs, etc., advising and counselling the Negro women of the County that they should register for jury duty; and that when the commissioners failed or refused so to do they violated Scott's Constitutional rights  a sort of denial of equal protection by omission.
We cannot agree with such reasoning. While the Courts, particularly the U.S. Supreme Court, have gone a long way toward "liberalizing" the Negro's Constitutional rights in the area of jury selection, it has never approached the novel doctrine here espoused.
No Negro woman has ever been excluded from the jury list in Hillsborough County. No Negro woman has ever been refused the right to serve as a juror. Certainly there has never been any systematic effort to prevent Negro women in the County from so serving. It is not contended that the jury commissioners did any positive act to violate Scott's rights. Thus, the vitiating element permeating the cases in this sphere of civil rights litigation, namely, the affirmative act or acts amounting to Constitutional violation by State officials, is not present here.
As said by the U.S. Supreme Court in Hoyt, supra, the right to an impartial selected jury 
"* * * does not entitle one accused of crime to a jury tailored to the circumstances of the particular case, whether relating to the sex or other condition *496 of the defendant, or to the nature of the charges to be tried. It requires only that the jury be indiscriminately drawn from among those eligible in the community for jury service, untrammelled by any arbitrary and systematic exclusions. See Fay v. [People of State of] New York, 332 U.S. 261, 284-285, 67 S.Ct. 1613, 1625, 1626, 91 L.Ed. 2043, and the cases cited therein. The result of this appeal must therefore depend on whether such an exclusion of women from jury service has been shown.
* * * * * *
Manifestly, Florida's § 40.01(1) does not purport to exclude women from state jury service. Rather, the statute `gives to women the privilege to serve but does not impose service as a duty'. Fay v. New York, supra, 332 U.S. at 277, 67 S.Ct. at 1622. It accords women an absolute exemption from jury service unless they expressly waive that privilege.
* * * * * *
* * * Despite the enlightened emancipation of women from the restrictions and protections of bygone years, and their entry into many parts of community life formerly considered to be reserved to men, woman is still regarded as the center of home and family life. We cannot say that it is constitutionally impermissible for a State, acting in pursuit of the general welfare, to conclude that a woman should be relieved from the civic duty of jury service unless she herself determines that such service is consistent with her own special responsibilities." (Emphasis supplied.)
The Court then held that the proviso to F.S. § 40.10, F.S.A. was constitutional as written and also "as applied in this case". Testimony of the local jury commissioners was taken at the trial level in Hoyt and extensively quoted in the margin of the high Court's opinion, which testimony shows that substantially the same ground was covered there as here.
We emphasize again that defendant has not pointed to any asseverative act on the part of Florida's jury officials that by design has excluded any Negro woman from jury service. Our point is illustrated again by the high Court in Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, a case involving the preparation of a jury list by state jury commissioners, wherein it was said:
"Although a Negro defendant is not entitled to a jury containing members of his race, a State's purposeful or deliberate denial to Negroes on account of race, of participation as jurors in the administration of justice violates the Equal Protection Clause. [Cases cited]". (Emphasis supplied.)
This principle was originally announced in 1899 in Carter v. State of Texas, 177 U.S. 442, 447, 20 S.Ct. 687, 689, 44 L.Ed. 839, where, in respect to exclusion from grand juries, the Court said:
"Whenever by any action of a state, whether through its legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied * * *" (Emphasis supplied.)
The due process and equal protection clauses do not place upon State officials any constitutional duty to seek out or even encourage by affirmative action any particular class or body of citizens to become registered to vote, or thereafter for the women of that class to register for jury duty. The Voting Rights Act of 1965, 42 U.S.C.A. § 1973, which was designed to effectuate the full suffrage rights of the Negro under the Constitution, embodies no such requirement. And it cannot be said that the Constitution otherwise requires jury officials to seek out Negro *497 women to serve on juries in Hillsborough County.
The cases of Whitus v. State of Georgia, 1967, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599; Labat v. Bennett, CA 5, 1966, 365 F.2d 698; Brooks v. Beto, CA 5, 1966, 366 F.2d 1; and Rabinowitz v. United States, CA 5, 1966, 366 F.2d 34, relied upon by defendant are distinguishable. One of these, Brooks v. Beto, actually involved the "purposeful inclusion of Negroes in the grand jury returning the indictment", and is clearly inapplicable. The remaining three cases have to do with the systematic exclusion of Negroes on jury panels because of their race.
Labat involved actions of jury commissioners with reference to the "jury wheel" in Orleans Parish, Louisiana, from which jury panels derived, resulting in "purposeful exclusion" of Negroes from jury duty, and in the course of the opinion a footnote was expressly inserted stating that "women do not ordinarily serve on the juries in Louisiana; they must volunteer". This implies that state policy there with respect to Negro women, identical with that existing here, is without the scope of any Constitutional question as to exclusion from jury service of Negroes generally. And in Whitus, a case from Georgia, it is likewise observed in passing that, under Georgia statute law, "[women], while qualified to serve, are not compelled to serve and may be excused upon request."
The distinguishing feature in those cases is that generally the Negro man has a right to sit on a jury, or at least be equally available for jury duty, without discrimination because of his race or color, but that in some States like Florida the Negro woman has a privilege to be available for such jury duty  a privilege which she may or may not exercise as she sees fit, in her uncontrollable discretion. There is no question here of any exclusion because of race or otherwise. There is no intimation that any Negro woman has ever been excluded from jury service in Hillsborough County by any governmental official; nor denied her privilege to become available for such service by registering in accordance with State law.[2]
The proviso in F.S. § 40.01, F.S.A., in effect when the instant case was tried, merely provides that no woman, white or Negro, is eligible for jury service unless she "has registered with the clerk of the circuit court her desire to be placed on the jury list". No distinction is made as to color within the over-all class of women. Nor is any duty imposed upon the jury commissioners to seek out unregistered Negro women, any more than unregistered white women, and urge them to register. And we see no Constitutional difference between official interference by encouraging women to register and discouraging women to register. But if any jury commissioner should deign to do the latter, we can envision the holocaust of castigation which would descend upon his head for alleged unconstitutional attempts to exclude a class of persons from jury duty. See Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181; 166 A.L.R. 1422.
As the Florida Supreme well said in Hoyt (text 118 So.2d 694):
"The law vests in the individuals [women] concerned, as those best qualified to judge, the right to decide without compulsion whether such service could be rendered without risk of impairment in their more vital role. There is an obvious distinction between such a legislative classification or rule of privilege and the case of a blanket administrative exclusion of an eligible class for supposed hardship." (Emphasis supplied.)
*498 There was no error in denying the motions to quash the indictment and the petit jury panel.
The only other two points urged by defendant Scott here are (1) the denial to defendant of police reports containing statements from one of the State's witnesses which "could have been used * * for impeachment purposes", and (2) the instruction given by the trial Judge on excusable homicide and the refusal to give an instruction requested by defendant.
The withholding of production to defense counsel of the police report has been settled adversely to defendant in several cases: McAden v. State, 1945, 155 Fla. 523, 21 So.2d 33; State v. Lampp, Fla.App. 1963, 155 So.2d 10; State v. McCall, Fla. App. 1966, 186 So.2d 324.
As to the instructions on excusable homicide, F.S. § 782.03, F.S.A. provides that 
"Homicide is excusable when committed by accident and misfortune * * * upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner."
The killing in question took place during an altercation between defendant, Walter Scott, his wife, Carolyn, and her sister Stella. There was a pistol involved, and during the melee Carolyn was shot to death. Her sister Stella testified for the State that on the day in question, October 27, 1966, Scott was visiting his estranged wife, Carolyn, in her parents' home. Stella told him to leave because her mother had asked him to. He declined to leave, Stella testified, so she obtained her father's gun from her mother's room, went back to a hallway in the house, saw Scott and Carolyn in the middle of the livingroom floor, and the next thing she knew Scott took the gun out of her hand and shot her sister Carolyn, who was lying on the floor. The first bullet entered the left collarbone of Carolyn and exited under the right arm, causing immediate death, according to a pathologist. There were four other bullet wounds in Carolyn's back and a knife cut on her hand. Stella testified, in effect, that all shots were fired while Carolyn was lying face down on the floor and that the deceased never moved while the shots were being fired.
Scott contended in his testimony that it was Stella and Carolyn who had the weapons and not him.
The trial Judge charged the jury that 
"Excusable homicide is homicide which is committed * * * by accident and misfortune in the heat of passion upon any sudden and sufficient provocation."
By requested instruction defendant sought to have the trial Judge supplement his charge as given, by adding on the following language:
"* * * upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner".
The instruction given by the Court was obviously compatible with the evidence in the case which conclusively established that a weapon was used because the decedent was shot by five bullets. And by the same token, defendant's requested instruction was likewise inappropriate, because it pre-supposed the absence of any weapon.
The trial Judge gave an able, clear and comprehensive charge on the law applicable to the facts in evidence, and there is no area for the contention that the jury was misled.
The foregoing constitutes the only three propositions urged here for reversal, no challenge being made to the sufficiency of the evidence to convict. The grounds relied upon being determined adversely to the defendant, the judgment of conviction appealed from is affirmed.
Affirmed.
LILES, C.J., and HOBSON, J., concur.
NOTES
[1] Hillsborough County comes within the purview of F.S. § 40.09 et seq., F.S.A., which provides for a jury commission, composed of two members appointed by the Governor, to draw up a jury list in that county once a year, certified to the Circuit Court.
[2] Subsequent to the trial of this case, the Legislature enacted Chapter 67-154 General Laws of Florida, 1967, which, in effect, repealed the aforesaid proviso to F.S. § 40.01, F.S.A. so as to remove the permissive status of women and to make them available for jury duty as of right with men.