RAWLS, Acting Chief Judge.
Appellant, Marvin Edwin Johnson, brings this appeal from a conviction of breaking and entering with intent to commit a felony, to wit: grand larceny. The pivotal point presented by this appeal is whether evidence exculpatory to Johnson was suppressed when Johnson was denied the opportunity to cross-examine Police Officer Shiver after he had testified concerning a police report Shiver had authored on his investigation of the breaking and entering.
Around 1:00 a. m. on January 23, 1970, the police were summoned to investigate a breaking and entering at a corner 7-11 Store. The burglar, or burglars, had gained entrance to the store through a 2 x 3 ft. hole they had forced in the roof of the building. At trial the State commenced to build its case by introducing *171 photographs of the 7-11 and its roof which depicted a white building material substance in the area where the hole had been forced. Officer Shiver, who was the first to arrive at the scene, next testified that when he approached the store he observed a man near the store whom he ordered to “halt.” The man ignored his order and ran into a dense wooded area behind the 7-11. A search was conducted of the woods and Johnson was found hiding behind a log. Officer Shiver further testified that when Johnson was brought from the woods he observed a white powdery substance on the outer and inside sleeve of Johnson’s brown jacket and that “I feel like I know what type of substance it was.” At this juncture, defense counsel attempted to cross-examine Shiver concerning discrepancies in his court testimony and a police report of the investigation authored by him on the night of the burglary which made no mention of a white substance on Johnson’s jacket or that Shiver had upon reaching the store requested Johnson to halt.” [1] The trial judge ruled that the police report would not be received into evidence,[2] and that it could not be used to impeach Shiver’s testimony as he had not used it to refresh his recollection while testifying.[3]
The mention of the “white powdery substance” did not end with Officer Shiver’s testimony. The State introduced a sledge hammer also found in the woods which had traces of the “white substance” on it. In closing argument to the jury, the prosecuting attorney made much “legal hay” of the white substance on Johnson’s clothing. He reminded the jury several times of Officer Shiver’s testimony concerning the “white substance” on Johnson’s jacket and pointed out that the photographs of the hole in the roof depicted a white substance. The prosecutor then stated: “. . . if he had on a brown jacket, slipped in that hole and if he had on a brown jacket, he got some of that white stuff on him as he slipped down that hole and into that storeroom . . . Marvin Johnson in his story *172 explained everything except the stuff on his jacket.”
Marvin Johnson’s testimony to the jury was that he was at the 7-11 Store the night of the burglary to use the telephone to call his sister to bring him a flashlight so that he could see to short-circuit the starter to his car which he had left with his ex-wife parked some two miles away. Johnson stated that he had been out riding around with his ex-wife trying to reconcile their marriage when he parked his car to talk. Upon his inability to get the car started again he walked to the 7-11 to use the phone. As he arrived at the store he saw two men jump off the roof and run into the woods. Officer Shiver arrived almost simultaneously and Johnson, thinking Shiver to be another burglar, became frightened and ran off into the woods. Johnson denied that Officer Shiver told him to “halt.” As for the jacket, Johnson acknowledged that he had on a brown working jacket that could have had some stains on it. He denied that he had been upon the roof of the 7-11 where he would have come in contact with the “white powdery substance.” Johnson’s story was confirmed by his ex-wife.
The blocks out of which the State’s case was constructed were all circumstantial. The case for the defense rested on Johnson’s explanation of his presence at the scene and his ability to refute the State’s circumstantial evidence. The State’s version and that given by the defense of what transpired at the 7-11 Store differ substantially only in whether there was a white substance on Johnson’s jacket which could link him to the hole in the roof. Thus, the discrepancies in Officer Shiver’s in-court testimony concerning the white substance found on Johnson’s jacket and his report made on the night of the burglary which did not mention finding this substance on the jacket become of critical importance to Johnson.[4] Even so, Johnson was denied use of this report at trial.
Attorney General Robert L. Shevin, in a brief signed on his behalf by his assistants, urges this court to uphold the trial court’s exclusion of the subject report and cites a number of Florida authorities, including this court’s opinion in Kimbrough v. State.[5] We agree with the Attorney General that prior to Pitts v. State[6] the settled jurisprudence of this State precluded the use of such a report for impeachment purposes. The Supreme Court of Florida granted certiorari in regard to this court’s opinion [7] in the Pitts matter. Mr. Shevin’s memory is apparently very short for in Pitts, as Attorney General for this State, he filed in the Supreme Court of Florida a “motion in confession of error.” In his motion the Attorney General “confessed” that the State had erred in not voluntarily providing defense counsel with a certain statement it held from a witness which might have been useful to the defense for impeachment purposes. Based solely upon Mr. Shevin’s “confession of error,” the Supreme Court vacated the opinion in State v. Pitts, supra, “without any determination on the questions of law discussed therein.” On remand, this court in an opinion authored by Judge Spector,[8] stated:
“Thus, we are confronted with a most unusual juridical question. We must, of course, enter a mandate which conforms in all respects to the mandate of the Supreme Court herein. Of that there is neither doubt nor hesitancy on our part for we are a court of law. But, there *173 yet remains the troublesome question resulting from the Supreme Court’s election to vacate our opinion ‘without any determination on the questions of law discussed therein.’ Can we permit our opinion to stand and thereby render the rules of law stated therein applicable to all other prisoners except these defendants? We think not. The equal protection clause of the state and federal constitutions requires that every person’s rights be determined by application of the same rule of law. We will not apply a different principle of law to an un-championed prisoner than is resultingly being applied to these defendants by virtue of the Attorney General’s motion in confession of error and the argumentation contained in the memorandum brief submitted to the Supreme Court in support of the State’s motion.”
Apparently, appellant Marvin Edwin Johnson is an “unchampioned prisoner” since Mr. Shevin has taken a position in the instant case diametrically opposite to the position he urged in the Pitts case. As stated in our decision upon remand of the Pitts case:[9]
“. . . we adopt the rule in this jurisdiction advanced in behalf of these defendants by the Attorney General and now hold that matters going to the credibility of a state’s witness are cognizable

“The constitutional imperative of equal protection demands no less. That protection is due the unpopular as well as the popular, the prisoner who stands alone as well as those whose cause is widely celebrated.”
Reversed and remanded for a new trial.
WIGGINTON and JOHNSON, JJ., concur.

.The apidicable portion of the report reads as follows:
“At approx 1:06 a. m. this date [23 Jan. 19701 HQ dispatched a call that someone was breaking into the above business. I arrived at the scene at approx 1:11 a. m. and came in from the east next to some woods. At this time I jumped out of my car and ran toward the store when I caught a glimpse of someone running into the woods east of the building, then I heard the brush start moving. At this time I ran back to my car and told all other units waiting that the suspects were in the woods behind the business. Upon arrival of the other units we began to search the woods. After a few minutes’ search Sgt. Peoples found the above suspect lying down in the woods. We escorted suspect out of the woods where he wras searched. Sgt. Peoples observed a screw (cont.) driver in his (suspect’s) rear pocket but suspect threw it back into the woods. After being searched suspect was placed in the patrol car by J. W. Smoot where his rights were read to him by Officer Smoot. Myself and Officer Knowles continued to search the woods for another suspect where we ran across a sledge hammer that apparently was used to knock the hole in the roof of the business.
“Investigation of the business revealed that suspect had attempted to pry open the rear door of the business with a screwdriver (apparently the one found in his pocket) but evidently failed. Suspect then climbed onto the roof and used a sledge hammer to beat a hole through it. Once the hole was made suspect dropped a stepladder through the hole so entry could be made. It is undetermined at this time whether or not anything was taken. “Suspect was transported to county jail by Officer J. W. Smoot. Scene was processed by W. W. Collins and also all evidence was turned over to him.
“Hearing will be set at 9:00 a. m. 26 Jan 70 Docket #1668.”

. Defense counsel had prior to trial served on Officer Shiver a subpoena duces tecum requiring Shiver to produce his notes and memoranda at trial.

. The day before testifying, Shiver had referred to the top portion of the report which contained information on the date, time and place of the offense. The trial judge did allow defense counsel to cross-examine Shiver on this portion of the report on the basis that he had used it to refresh his recollection.

. The police removed Johnson’s jacket at the scene and took it into their custody. It was subsequently unexplainably lost. This loss deprived the jurors and Johnson of the benefit of a chemical analysis and makes the discrepancies in Shiver’s testimony and his report even more critical.

. Kimbrough v. State, 219 So.2d 122 (1 Ma.App.1969).

. Pitts v. State, 247 So.2d 53 (Ma.1971).

. State v. Pitts, 241 So.2d 399 (1 Ma. App.1970).

. State v. Pitts, 249 So.2d 47, 48 (1 Fla.App.1971).

. State v. Pitts, 249 So.2d 47, 50 (1 Fla.App.1971).