284 So.2d 198 (1973)
STATE of Florida, Petitioner,
v.
Marvin Edwin JOHNSON, Respondent.
No. 43099.
Supreme Court of Florida.
October 10, 1973.
*199 Robert L. Shevin, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., for petitioner.
Samuel S. Jacobson, Jacksonville, for respondent.
DEKLE, Justice.
Upon the State's petition, writ of certiorari issued to the First District Court of Appeal to review its opinion at 268 So.2d 170 relating to a rather interesting question regarding attempted use of police reports in evidence and for purposes of cross examination.[1]
Respondent-defendant was charged with breaking and entering a 7-11 Store with intent to commit a felony. As defendant's trial progressed, it became evident that entrance to the store was gained through a 2 x 3 ft. hole forced in the roof. Photographs of the roof disclosed the presence of a white powdery building substance around the forced roof hole. The arresting officer testified that upon arriving at the 7-11 Store, he observed a man near the store, who ignored his order to "halt" and who ran into a wooded area behind the 7-11 Store. The officer pursued this man and arrested him, the present defendant, in the wooded area hiding behind a log. The officer also said that defendant's jacket at the time of the arrest had a white powdery substance on it.
Defense counsel tried to cross-examine the arresting officer concerning what counsel contended were "discrepancies" between the officer's court testimony and his initial police report of the incident which made no mention of the white powdery substance or the order to "halt". Counsel, with commmendable foresight, had caused subpoena duces tecum to issue for the police report and sought to tender it into evidence and to cross examine from it. The trial judge ruled the police report not amenable to subpoena; that it was inadmissible; and could not be used for impeachment purposes.
The two points for impeachment become critical when considered with the overall evidence in the case, perhaps best highlighted in the prosecutor's summation that "Marvin Johnson in his story explained everything except the stuff on his jacket." The defense depended upon Johnson's explanation of his presence at the scene as being merely for the purpose of using the telephone to call his sister for a flashlight so that he could see to short circuit the starter on his car, which he had left with his ex-wife parked some two miles away; that as he arrived at the store he saw two men jump off the roof and run into the woods; that the officer arrived almost simultaneously and Johnson thought the officer was another burglar, became frightened and ran off into the woods. He expressly denied that there was an order to halt and as to the jacket said that it "could have had some stains on it" but denied being on the roof. His ex-wife confirmed the car not starting and that the defendant went to use the telephone. In this posture, it becomes apparent that the key issues surrounding such a point of cleavage become vital and are possibly exculpatory of Johnson.
The jury found the defendant guilty and he appealed. The First District Court of Appeal reversed and granted a new trial. In its opinion, the district court relied on Pitts v. State, 247 So.2d 53 (Fla. 1971), and its own State v. Pitts, 249 So.2d 47 (Fla.App. 1st 1971), entered upon remand of Pitts, in holding the police report admissible for impeachment purposes under these circumstances.
Our order granting certiorari in this matter was based upon a direct conflict *200 with Scott v. State, 207 So.2d 493 (Fla. App.2d 1968). In Scott, the defendant sought to have a police report produced for impeachment purposes and the 2nd District frustrated the effort by saying defendant is not entitled to the production of a police report for any purpose. In so ruling, Scott necessarily intimates that police reports are not admissible for impeachment purposes.
We do not view our own Pitts v. State, 247 So.2d 53 (Fla. 1971), as precedent for the opinion here under review, inasmuch as our holding was solely upon the Attorney General's "confession of error" in that cause. Upon remand of our opinion in "Pitts", the 1st District elected to write its opinion on the mandate which is relied upon in the opinion sub judice (State v. Pitts, 249 So.2d 47, 48 (Fla.App. 1st 1971)). The 1st District's statements in Pitts and here are in conflict with Scott. In the opinion under review the First District cited its own "District Pitts" as authority for its holding herein. In any event, Supreme Pitts did not by virtue of its remand upon limited grounds, specifically answer the question regarding the use of statements or reports for impeachment purposes in the circumstances; accordingly the question should be resolved here.[2]
Admissibility of police reports, statements and documents depends upon the point of evidence sought to be impeached and the posture of the case. Normally, a mere negative use sought to be made of a portion of an initial police investigative report for impeachment should not be allowed; e.g., "Why did you not include in your report the fact, as you testified here today, that the defendant was dressed in dark clothing? Why did you not state in your report that he was first observed near the public telephone?" and so on.
Absent some singular importance attaching to the point in question, which goes to a material and critical fact in serious contention in the trial, a negative basis is not the kind of use of a police report which justifies breaching the normally protected police reports and investigative notes, reports and files. A permissive use would open up unjustified inquiry in almost every case as to why an officer failed to do a certain thing in one instance and did it in another, amounting to just "fishing" in a sense. The inquiry must be upon a crucial point and preferably upon a positive statement in such a report, which the witness at trial flatly refutes, thus placing his credibility and the point involved in vital focus so that it becomes critical to the defense. Such an instance might be where the defendant was shot and bleeding and the officer indicated in his report that he was not injured; that he was alone when he testified there were two men, etc. The distinction becomes clear when one realizes the pressures of an investigation and the fact that certain data is to be reported at one time and other data upon other forms at a later date; that time is often critical and that insignificant points serve no purpose in such a report, though developing unforeseen seeming importance later.
We must also bear in mind that police reports and documents often include leads to other cases and other suspects. This information must be protected in order to afford fair pursuit of such involvement by others and the solution of other offenses. These important objectives can be destroyed or defeated if police reports are made so readily available; the police would understandably be hesitant to enter freely in reports what might be of help later on if they were not generally protected.
We hold, therefore, that only in the restricted sense herein outlined will production and use in evidence of police reports and statements for impeachment purposes by way of cross examination or by placing in evidence be allowed, in the *201 sound discretion of the trial court. In the circumstances of the present case we view the point as critical and within this restrictive rule.
We reject the total refusal to produce for any purpose in Scott but in so doing we note the practice of "in camera" preinspection by the court of the documents or evidence sought, prior to production or use, as being proper to preserve the safeguards above outlined. Upon such review the court of course removes or appropriately deletes any improper matter. See Crim. Proc. Rule 3.220(a)(1)(ii) and (c)(2), (i), 33 F.S.A.
We likewise reject the broad rule of District Pitts "that [all] matters going to the credibility of a state's witness are cognizable in habeas or other post-conviction proceedings notwithstanding a guilty plea." It depends, as we have said, upon 1) being critical 2) upon a material and vital point 3) reasonably exculpatory of defendant, within sound judicial discretion, and 4) after "in camera" review and deletion of any improper matter.
We concur in the judgment and reversal for new trial of the First District and discharge the writ of certiorari.
It is so ordered.
CARLTON, C.J., and BOYD and McCAIN, JJ., concur.
ADKINS, J., dissents with opinion.
ADKINS, Justice (dissenting):
I must disagree with the opinion in this cause, for I feel that the use of the initial police report for cross-examination of a police officer in this case would be an unnecessary invasion of police procedure.
The majority opinion limits the use of such reports to situations where the issue under attack is crucial, and states it would be preferable for the issue to be based on "a positive statement in such a report." A new rule is then applied to the facts of the case sub judice, where no statement was made on the "crucial" issue of the presence of white powder on the coat of the defendant.
The facts of the case sub judice, wherein such use of an initial police report is authorized, present ample practical illustration of the problems which would be inherent in the use of such reports.
The report, written shortly after a nocturnal chase through the woods and arrest, is short and incomplete. It fails to describe the clothing worn by the suspect, and does not mention the presence of white powder on the suspect's clothing.
It is suggested that the failure of the arresting officer to instantly discern the importance of the powder should be a basis for attacking his veracity and credibility. I must disagree, as it is fundamentally unfair to hold a police officer to such a standard. We should not expect an officer to foresee that the fact that a man who had run through the woods and hidden on the ground behind a log had dirt on his jacket would be "crucial" to the issue of guilt or innocence.
The alternative would be to require that initial police reports include every facet of information which might  under the most bizarre circumstances  possibly become relevant. A failure in this regard would render the credibility of the reporting officer open to attack. There has been no showing of a right in the accused to such information that would override the right of the police officer to do his job in the only way available to him in light of the shortages of men and equipment  and that way is quickly.
NOTES
[1] Fla. Const. art. V, § 3(b)(3) (1973), F.S.A.
[2] See State v. Matera, 266 So.2d 661, 668 (Fla. 1972), confirming the limitation of "Supreme Pitts" to the basis of the "motion and confession of error" and not upon other issues.