639 So.2d 1012 (1994)
Michael A. BARFIELD, Appellant,
v.
CITY OF FORT LAUDERDALE POLICE DEPARTMENT, Thomas McCarthy, and Michael Satz, Appellees.
No. 93-3650.
District Court of Appeal of Florida, Fourth District.
June 22, 1994.
Rehearing or Certification Denied August 12, 1994.
*1013 James K. Green, West Palm Beach, for appellant.
Jeffrey J. Hochman, Ft. Lauderdale, for appellee-City of Ft. Lauderdale Police Dept.
Rehearing En Banc or Certification Denied August 12, 1994.
ANSTEAD, Judge.
Appellant, Michael Barfield (Barfield), appeals from a final order denying his writ of mandamus that sought to compel appellees City of Fort Lauderdale Police Department, Police Chief Thomas McCarthy, and Broward County State Attorney Michael Satz (collectively "the City"), to produce certain public records for inspection under Florida's Public Records Act. We affirm.

FACTS AND PROCEEDINGS IN THE TRIAL COURT
Pursuant to the public records law, Barfield made three requests to the Fort Lauderdale Police Department (department) seeking to inspect various documents gathered in two department investigations. The first two requests sought records from a criminal investigation into the shooting death of Marcillus Miller by two police officers. The third request concerned the department's investigation into an incident in which a police dog bit Pedro Jimenez.[1]
The department refused to release the records on the ground that they were part of an active criminal investigation and thus specifically *1014 exempt from examination under the public records law. According to the department, a criminal investigation was underway, and, when completed, the findings would be forwarded to the state attorney's office for review and subsequent investigation by the grand jury. The department acknowledged that it follows this procedure in virtually all cases involving police shootings or similar conduct.
Barfield filed a complaint seeking an alternative writ of mandamus compelling the City to show cause and the City answered by reaffirming its position as set out above. The trial court held a hearing, at which the City presented the testimony of Sergeant Charles Walker, who was in charge of the Miller investigation. He testified the investigation was still "active" and "ongoing," because the state attorney was scheduled to present it to the grand jury in less than three weeks pursuant to the department's policy of sending all police shooting cases to the grand jury. When asked if he had a "reasonable good faith anticipation of securing an arrest or prosecution of the two officers involved in the Marcillus Miller shooting," Walker replied, "I don't know."
Shortly thereafter, the trial court entered an order finding the records exempt from disclosure because there was an active and ongoing criminal investigation in both cases.

LAW & ANALYSIS
The general purpose of the Florida Public Records Act (Act) is to open public records so Florida's citizens can directly observe the actions of their government. Browning v. Walton, 351 So.2d 380, 381 (Fla. 4th DCA 1977). Section 119.01(1), Florida Statutes (1993), expressly declares that: "It is the policy of this state that all state, county, and municipal records shall at all times be open for inspection by any person." In light of this underlying policy, the Act is to be construed liberally in favor of openness, and all exemptions from disclosure construed narrowly and limited to their designated purpose. See Tribune Co. v. Public Records, 493 So.2d 480, 483 (Fla. 2d DCA 1986), rev. denied sub nom., Gillum v. Tribune Co., 503 So.2d 327 (Fla. 1987).
While Florida has a strong public policy in favor of open government, the sanctity of police records compiled during a criminal investigation also has a long heritage in Florida. For years, law enforcement agencies could seek protection based on the common law "police secrets rule," a rule adopted by Florida courts to shield certain investigative information from public inspection. See generally Op.Att'y Gen.Fla. 80-96 (1980). This rule was based on the belief that some agency records had to be kept confidential, at least temporarily, so that the agency may successfully complete its investigations and, ultimately, apprehend violators of the law. See Lee v. Beach Pub. Co., 127 Fla. 600, 604, 173 So. 440, 442 (1937) (recognizing that some police records must remain secret and free from public inspection as a matter of public policy). In another context, the supreme court has said:
We must also bear in mind that police reports and documents often include leads to other cases and other suspects. This information must be protected in order to afford fair pursuit of such involvement by others and the solution of other offenses. These important objectives can be destroyed or defeated if police reports are made so readily available; the police would understandably be hesitant to enter freely in reports what might be of help later on if they were not generally protected.
State v. Johnson, 284 So.2d 198, 200 (Fla. 1973).
In 1979, the supreme court in Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla. 1979), held the only exemptions to the Public Records Act, and thus disclosure, were those expressly adopted as statutory exceptions: "If the common law privileges are to be included as exemptions, it is up to the legislature, and not this Court, to amend the statute." Id. at 424. The legislature reacted to Wait by codifying the police secrets rule into the Act as an exemption for "active criminal intelligence information" and "active criminal investigative information." See Ch. 79-187, §§ 1, 2, at 723-24, Laws of Fla.
*1015 Section 119.07(3)(d) now contains an express statutory exemption to disclosure and provides that: "Active criminal intelligence information and active criminal investigative information are exempt from the provisions of subsection (1)." Section 119.011(3)(b) defines "criminal investigative information" as
information with respect to an identifiable person or group of persons compiled by a criminal justice agency in the course of conducting a criminal investigation of a specific act or omission, including, but not limited to, information derived from laboratory tests, reports of investigators or informants, or any type of surveillance.
Section 119.011(3)(d)2 defines "active" as follows:
Criminal investigative information shall be considered "active" as long as it is related to an ongoing investigation which is continuing with a reasonable, good faith anticipation of securing an arrest or prosecution in the foreseeable future.
A governmental agency claiming the benefit of these exemptions has the burden of proving its entitlement to it. See Florida Freedom Newspapers, Inc. v. Dempsey, 478 So.2d 1128, 1130 (Fla. 1st DCA 1985).
Reduced to its essence, then, the issue presented for our review is whether the trial court erred in concluding that the police records in the Miller and Jimenez cases were "active criminal investigative information" as those terms are defined in the Act. Specifically, Barfield contends the City failed to carry its burden of proof because the City's lone witness admitted he did not know if "an arrest or prosecution" of the officers was anticipated in the foreseeable future. In other words, the police agency must reasonably anticipate an arrest or prosecution of the officers in question if it is to be permitted to withhold public inspection of the records.
The City, by contrast, points out that both the state attorney and the grand jury have continuing investigative authority over criminal investigations, including situations where a police officer is being investigated for the alleged use of excessive force. The City acknowledges that one reason for its policy of asking the state attorney and grand jury to investigate possible police misconduct is to avoid the appearance of impropriety fostered by law enforcement officers policing themselves. However, because the police agency is acting in good faith, and the state attorney and the grand jury serve a critical and valid function in such cases, the City asserts the investigative information compiled during this process should be considered "active" since an arrest or prosecution may occur at the discretion of the state attorney or grand jury. In short, the City maintains that, as a matter of law, a criminal investigation is "active" if the case is still being actively reviewed for possible criminal prosecution by the state attorney or grand jury.
In Florida Freedom Newspapers, Inc., 478 So.2d at 1128, the FDLE was called upon to investigate the disappearance of approximately $12,600 from the Bay County Sheriff's Office. FDLE denied Florida Freedom's request for access to its investigative files, claiming they were exempt under the "active criminal investigative information" exemption. In response, Florida Freedom petitioned for a writ of mandamus to compel disclosure. At the hearing on the petition, the agent in charge of FDLE's investigation provided testimony demonstrating that the investigation about the missing funds was ongoing. Nevertheless, the evidence also showed there were no arrests or charges filed, nor were there then any identifiable suspects.
On appeal from the trial court's denial of its petition, Florida Freedom argued the lack of suspects was inconsistent with FDLE's claim of a "good faith anticipation of securing an arrest or prosecution in the foreseeable future." Obviously, the police could not anticipate an arrest or prosecution if there were no identifiable suspects. In rejecting this argument, the first district observed:
We do not agree that this conclusion necessarily follows. There is no fixed time limit for naming suspects or making arrests other than the applicable statute of limitations. This particular investigation had been in progress only four and a half months, and the fact that the investigators might not yet have decided upon a suspect *1016 does not necessarily imply that the investigation fails to meet the statutory requirements of good faith and anticipation of prosecution in the foreseeable future.

Id. at 1131 (emphasis supplied). This decision indicates the police, so long as they are acting in good faith, should be given substantial leeway in conducting an ongoing investigation even when there may be no immediate prospect of an arrest or prosecution.
In News-Press Publishing Co. v. Sapp, 464 So.2d 1335 (Fla. 2d DCA 1985), News-Press sought access to certain records compiled by the local sheriff as a result of an internal investigation into a shooting by deputies. The sheriff refused to permit inspection because the grand jury was scheduled to consider the incident in the near future. Thereafter, News-Press Publishing petitioned the trial court to compel production of the records. A hearing was held four days before the grand jury was to convene wherein the above facts were established. At the conclusion of the hearing, the trial court stated:
The Court does find that the information requested is criminal investigative information which is active in that it is related to an on-going [sic] investigation which is continuing in reasonable good faith[,] anticipating the securing of an arrest or prosecution in the foreseeable future or returning a no bill.

Id. at 1336 (emphasis added). The second district affirmed this decision by reciting the above facts and also quoting the trial court's written order, which stated, in relevant part:
6. By reason of the ongoing investigation of the underlying incident by the Highlands County State Attorney and the convening of the Highlands County Grand Jury in the very near future to consider such incident, the subject documents constitute "active criminal investigative information," and are therefore exempt from inspection under Section 119.07(1)(a) Fla. Stats.
Id.
These two cases suggest that an investigation into a police shooting will be considered "active," even if there is no definite anticipation during a particular stage of the police investigation that the officers involved will be arrested or prosecuted, so long as the investigative process is continuing in good faith.[2] In particular, Dempsey stands for the proposition that it is unnecessary to show an actual suspect will be arrested or prosecuted in order to prove an investigation is still "active." Furthermore, Sapp appears directly on point, and stands for the proposition that the legitimate consideration of a case by a grand jury, standing alone, is sufficient to invoke the "active criminal investigative information" exemption.
On its face, the definition of "active" requires a showing in each particular case that an arrest or prosecution is reasonably anticipated in the foreseeable future. However, the meaning of that phrase is not entirely clear. We have no difficulty applying this language in a straightforward manner to typical criminal investigations when it is apparent to all that a crime has been committed. For example, after the report of a burglary, the police may reasonably anticipate their investigative efforts will be successful and ultimately lead to an arrest or prosecution. Even in the "typical" case, however, the eventual outcome may be uncertain. Cf. Dempsey.
Further, not all cases will fit the "typical" mold. For example, an automobile accident may result in a death, and, ultimately lead to a prosecution for manslaughter. However, the decision to prosecute may be difficult, and not be reached until after a thorough and time-consuming investigation. During such an investigation, the police view of the case may often change. We do not believe the legislature intended that confidentiality *1017 be limited to investigations where the outcome, and an arrest or prosecution, was a certainty, or even a probability. Indeed, such a result would be absurd if investigations are to be conducted fairly and objectively. To maintain confidentiality the police would first have to determine there was a good case, and then do the investigation. That is clearly putting the cart before the horse.
Under Barfield's view, the City would have to be prepared, at all stages of the investigation, to provide someone, whether it be a fellow officer on the scene, the officer in charge of the investigation, or the assistant state attorney to whom the case was forwarded, who could render an opinion that there was a reasonable good faith anticipation that the officer involved would be arrested or prosecuted in the near future. But, as the City stated in its brief, "Law enforcement agencies should not be forced to `guess' whether a police shooting incident will or will not result in an indictment." Oftentimes, as was the case here, no one may know whether the officer will be charged. What happens when law enforcement personnel have conflicting opinions as to whether an officer should be charged?
A different situation would be presented if an affirmative decision is made to drop the investigation or put it on indefinite hold. But here, there is no contention that the investigation has been unduly delayed or stalled, nor is there any contention that the police are acting in bad faith in submitting the case to the state attorney or the grand jury. Rather, it is virtually undisputed that the matter is still under active consideration by the state attorney and the grand jury to determine whether there should be a prosecution.
Here, a law enforcement officer is being investigated for using excessive force in the course of the officer's duties. The City has determined that, under those circumstances, the public at large is better served by having the investigation conducted by the police department initially, but then independently reviewed by the state attorney's office, and possibly the grand jury. No one can know for certain the outcome of such review. The City contends independent examination by these bodies serves the important purpose of acting as a check on law enforcement. Ordinarily, the public may be skeptical of law enforcement agencies policing themselves, so adopting a policy of having a detached body review possible misconduct by law enforcement officers may avoid any appearance of impropriety.
Against this backdrop, we believe public policy concerns militate against construing the definition of "active" in the manner urged by Barfield. In saying this, we have not forgotten our duty to construe the exemptions narrowly. That duty, however, does not mandate a construction so narrow that the very purpose of the exemption, no matter how limited, is effectively defeated. And, as can be seen from the historical discussion above, the purpose of the "active criminal investigative information" exception is to prevent premature disclosure of information during an ongoing investigation being conducted in good faith by criminal justice authorities. See also Tribune Co., 493 So.2d at 483. More importantly, there is simply nothing in the statutory scheme of the Act to suggest the legislature would disapprove of the City's policy of taking excessive force cases to the state attorney for possible grand jury review.
Thus, we interpret the definition of "active" to mean that, even though there is no immediate anticipation of an arrest, so long as the investigation is proceeding in good faith, and the state attorney or grand jury will reach a determination in the foreseeable future, the requested information is not subject to disclosure. Put differently, we construe the phrase "anticipation of an arrest or prosecution" to mean that an arrest or prosecution may result, not that it must. This construction avoids the problem of having to rely on the subjective views of various law enforcement officers as to the merits of a particular case, and also discourages premature requests for information early in an investigation when there may not even be an identifiable suspect. Accordingly, because the evidence adduced below demonstrated the investigations were ongoing and soon to be presented to the grand jury, we hold the *1018 City satisfied its burden of proving its entitlement to the exemption in question.
In passing, we note this is not a situation where the information sought will remain permanently confidential. Rather, once the investigations are concluded, if no charges are filed, the records would cease to be "active" and thus subject to disclosure. See In re: Grand Jury Investigation, Spring Term 1988, 543 So.2d 757, 759 (Fla. 2d DCA 1989) (investigative records created by state attorney and sheriff's office that were independent of records created by grand jury were subject to disclosure once grand jury returned no true bill and there was no new evidence in the case). By contrast, if the grand jury returns an indictment and a prosecution is pending, the information remains "active" and protected from disclosure. See section 119.011(3)(d)2 (information remains "active" if it is directly related to pending prosecutions).
Finally, we have considered Barfield's remaining arguments concerning the trial court's rulings and find them to be without merit.
Based on the foregoing, we affirm.
KLEIN and STEVENSON, JJ., concur.
NOTES
[1] Although the Jimenez case began as an internal affairs investigation, it subsequently proceeded to the state attorney's office to begin a criminal investigation. The trial court ultimately held these records were also exempt as part of an ongoing and active criminal investigation. Thus, because the issues are essentially the same regarding the two cases, we will treat them as one. Any references to the Miller investigation will apply equally to the Jimenez case.
[2] Cf. Wells v. Sarasota Herald Tribune Co., 546 So.2d 1105 (Fla. 2d DCA 1989). In Wells, the second district overturned a trial court order that certain investigative files were "inactive" and summarily held the records were exempt as "active criminal investigative information" because an in camera inspection led that court to conclude there was a reasonable, good faith anticipation of securing an arrest or prosecution in the foreseeable future on each of the dates the Herald Tribune demanded disclosure.