GLICKSTEIN, Judge.
Appellant was convicted of perjury. We affirm.
*73 The perjury took place in a deposition wherein appellant testified he was struck by a car in 1988. The state produced an eyewitness, assumingly believed by the jury, who testified that he was appellant’s co-worker in resealing a road in a Broward County development when a woman moved the barricades and drove her car on the newly sealed road, messing it up. Angered by what the woman had done, appellant decided to claim he was struck and injured by the ear when, in fact, the co-worker testified that appellant got a wrench and struck himself in the knee. Appellant and the co-worker told the investigating deputy that appellant had been struck by the car. As a result, the woman was charged with aggravated battery with a vehicle and jailed. At appellant’s perjury trial, the woman testified that she had not hit anyone with her car; but that the event had made her suicidal, occasioning her plea of no contest to the charge. Appellant sued the woman for his injuries, having apparently collected $25,-000 in a workers compensation claim as well, and the deposition in the civil proceeding led to the perjury charge when the co-worker apparently got cold feet before perjuring himself in a scheduled deposition. In 1991, the co-worker’s sister heard appellant relate to her brother that he had not been struck by the car and so testified at appellant’s trial.
The only defense witness was the investigating deputy who had prepared the affidavit in 1988 leading to the criminal charge based on what appellant and the co-worker told her. Her following testimony about the driver was based upon her 1993 deposition in the civil action against the driver:
A. Okay. According to this, my statement, and again, I say today I cannot due to the age of this case, I cannot remember the exact conversation, but she did acknowledge what happened. She certainly didn’t deny it.
Q. Okay. Do you have any recollection as to whether she gave you any explanation as to why she hit the man with her car?
A. For some reason she didn’t want to walk and I don’t recall what her reason was, but she did not care to walk.
Q. She told you that she just didn’t want to walk home?
A. Yes, and I don’t recall if she gave me a reason for her not wanting to walk. Again, according to this depo it says that she acknowledged striking the man with her car.
(Emphasis added).
On cross-examination, the following took place regarding the investigating deputy’s police report, which she had not seen prior to trial:
Q. Now, in the Probable Cause affidavit that you signed and in your police report-
A. Yes.
Q. —the incident report, you don’t attribute any statements to Ms. Alter? I mean, there’s no section in the P.C. sheet or in the — .
A. No.
Q. And I know it’s kind of unfair because so much time has passed, but as an experienced police officer, is it one of the most important pieces of evidence or something that you would want to put down verbatim or in quotes for a separate sheet is if the defendant makes any statements or admissions?
A. Not necessarily in a Probable Cause affidavit because again, because it’s a felony, it would be any statements or follow-up would be conducted by a detective.
Q. Okay. So what about in your police reports?
A. No, sir, not in the initial police report, that’s the function of our detectives was to do a follow-up, it’s a matter of procedure in our station.
Q. Well, I understand that. As far as taking a formal statement?
A. Um-hum.
[[Image here]]
Q. How is a prosecutor supposed to know that a defendant made a statement if it’s not in the report?
A. Again, it would not — I understand your question, I think, but it would not be the duty, let me put it that way, of a road patrol officer unless somebody made a *74 very spontaneous, a very spontaneous statement that was pursuant to the case to put it in the Probable Cause affidavit. It simply would not be the function of the road, with a patrol officer.
Q. But what about in your police report?
A. Again, unless it was a spontaneous statement it is simply not the function of the road patrol officer to put that type of information in the initial report. It would be the job of the follow-up detective, that’;s the function of the detectives, that’s how our department functions.
Q. What if the detectives don’t take a statement from the individual?
A. They’re always notified on a felony. They are the ones that make the decision, the detective division, no matter, regardless of the type of incident, it is the detectives division or their superiors are the ones that decide whether they need or wish to respond and whether they need or wish to take any type of formal statement, that’s the way our agency works.
Q. But my point — I’m not trying to be critical, but—
A. No, I’m trying to answer you.
Q. But you give a deposition, four years later no where in your report does it say that Ms. Alter, quote, made a statement that she hit someone and you did not refresh your memory from your reports or anyone else’s, correct, you haven’t seen any detectives reports or anything?
MS. HUART: I’m going to object to this line of questioning. The State attorney is well aware that Ms. Alter had her records sealed and we cannot get, couldn’t of those reports.
THE COURT: Overruled.
It is the trial court’s action as to that belated, limited objection together with the prosecutor’s following reference to the investigating deputy’s testimony in closing argument, to which no objection was made, that have led to this appeal:
Deputy Summerall came in here and first said she didn’t remember any statement that Ms. Alter had made. It was only after being shown at a deposition that was taken some four years after the incident when she had no means to refresh her recollection that she remembered, and even at that it was, I don’t really recall. She discussed the incident. Then, the question, “Did she say she hit his leg or she hit him,” and she says, ‘Tes.” She has no recollection of that today. I suggest to you if that had occurred, if she had said it in that way as apposed [sic] to what Ms. Alter said, I’m not suggesting that the deputy is lying, she didn’t have her reports. The records were sealed. If she had her reports, even when she had them here today, there was nothing, in her report saying that Ms. Alter said she hit this individual with her car, that she took the statement about the incident and said, yeah, she discussed it with me. Yeah, she discussed the incident, not that she hit him with the ear, and certainly she admitted her reports didn’t reflect that and I submit to you if there’s one thing that’s important in a criminal case, it’s what the defendant says and they put those in records. They may not put them in a Probable Cause sheet, but they certainly put them in police reports just for that reason, so they don’t forget later what was said.
Appellant relies solely upon State v. Johnson, 284 So.2d 198 (Fla.1973), which case and argument based thereon were never presented to the trial court as required by Glendening v. State, 536 So.2d 212 (Fla.1988), cert. denied, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989). Johnson compels the opposite result argued by appellant, albeit the state’s unexplained failure to address the case in any manner in its brief.
In Johnson, the state unsuccessfully sought certiorari from the district court’s reversal and remand for new trial in Johnson v. State, 268 So.2d 170 (Fla. 1st DCA 1972). The trial court had not made available the police report for cross-examination and the court of appeal held that to be error, with which the supreme court agreed, holding that the report should have been made available. There, as here, the matter at issue was critical to both parties; namely, whether the driver admitted to the investigating deputy that she had struck appellant with her car. *75 There, as here, the absence of something in the police report was critical — not the presence of something. The supreme court said in Johnson:
Absent some singular importance attaching to the point in question, which goes to a material and critical fact in serious contention in the trial, a negative basis is not the kind of use of a police report which justifies breaching the normally protected police reports and investigative notes, reports and files.
284 So.2d at 200. Thus, Johnson permits negative impeachment in limited circumstances. Cf. Jimenez v. State, 554 So.2d 15 (Fla. 3d DCA 1989) (a non-critieal negative did not justify production of the police report).
In sum, we conclude that it was not error for the trial court to permit impeachment upon a critical, negative omission from a police report as permitted by the supreme court in Johnson.
GUNTHER, C.J., and DELL, J., concur.